IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PRESLEY SCHIBERL, | CIVIL DIVISION |
| Plaintiff, | Case No. 2:21-cv-163 |
| v. | |
| CLARION BOARDS, LLC t/d/b/a Kronospan, | |
| Defendant. | |

**COMPLAINT AND JURY DEMAND**

A. *Preliminary Statement*

1. The plaintiff Presley Schiberl brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* to redress violations of his right to be free from employment discrimination and retaliation based upon his sexual orientation. Because of the violations described herein, this Court is also empowered to exercise pendant jurisdiction pursuant to the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.* A jury trial is demanded.

B. *Jurisdiction*

2. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e *et seq.*, 28 U.S.C. § 1331 and under the doctrine of pendant jurisdiction.

3. On or about October 26, 2020, the plaintiff timely filed a charge alleging harassment and discrimination with the Equal Employment Opportunity Commission ("EEOC"), docketed at 533-2021-00174. This charge was simultaneously cross-filed with the Pennsylvania Human Relations Commission.

4. The EEOC issued a Notice of Right to Sue on January 21, 2021.

5. This complaint is filed within 90 days of receipt by the plaintiff of the Notice of Right to Sue.

C. *The parties*

6. The plaintiff Presley Schiberl is an adult individual who resides at 315 Shreffler Road, Emlenton, Clarion County, PA 16373.

7. The defendant Clarion Boards, LLC t/d/b/a Kronospan ("Kronospan" or "the company") is an entity doing business in the Commonwealth of Pennsylvania, and, specifically, in this district. The defendant maintains a place of business at 143 Fiberboard Road, Shippenville, Clarion County, PA 16254.

8. At all times material, the defendant employed more than fifteen employees.

9. The defendant was the plaintiff's employer and is an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(b).

D. *Factual Background*

10. The plaintiff was employed by Kronospan, from November 2, 2018 through September 22, 2020, at which time he was constructively discharged due to a hostile work environment based on his sexual orientation. At the time of his constructive discharge, his job title was Production Technician.

11. The plaintiff's duties as Production Technician included finishing and cutting boards, stacking them and transporting them to other locations within the warehouse.

12. At all times relevant, the plaintiff performed the functions of his job competently and efficiently and was considered to be a satisfactory employee.

13. At all times relevant, James Confer was the Plant Manager and James Strickenberger was the B Team Supervisor. Strickenberger was the plaintiff's direct supervisor.

14. The plaintiff worked on a "team" consisting of approximately 10 to 13 male co-workers. Those co-workers included Jeff Dolby and David Schultz.

15. While the plaintiff was employed by Kronospan, he was subjected to a hostile environment in the workplace on account of his sexual orientation, including inappropriate comments, treatment and physical assaults by co-workers as further detailed below.

16. Shortly after the plaintiff was hired, Dolby Schultz and Strickenberger started making jokes about the plaintiff's height, weight and the car that he drove. They seemed to like picking on the plaintiff and making him the butt of their jokes.

17. By December 2018, the joking and teasing started becoming more personal and offensive. Dolby made inappropriate comments and "jokes" about the plaintiff's sexual orientation. For example, he often called the plaintiff a faggot and asked the plaintiff, "Do you have a dick and a pussy or just a pussy?" Schultz called the plaintiff a cross dresser (based on the socks that he regularly wore, which were colorful and not the white, black or grey socks that the other male co-workers regularly wore). He asked the plaintiff, "How many more clothes did you take from your mom?"

18. The examples above were not merely stray comments or one-time occurrences. These comments and jokes directed at the plaintiff's sexual orientation occurred on an ongoing and every-day basis.

19. The daily harassment and teasing started to take its toll on the plaintiff. The plaintiff was prone to depression, but, before this, he was always able to manage it. The constant harassment triggered his depression and it started to get worse.

20. In February 2019, the plaintiff approached Confer and told him that he was being harassed. The plaintiff asked Confer if he could switch to another team. Confer just smiled and

Case 2:21-cv-00163-CCW   Document 1   Filed 02/02/21   Page 4 of 9

said that he'd try to work it out. Unfortunately, however, Confer did not take any action and did not assign the plaintiff to a different team.

21. The harassment continued unabated. One day in May 2019, the plaintiff was in the break room waiting for the shift exchange. He was feeling very depressed. Steve Rinker, a forklift driver in the shipping department, saw the plaintiff and noticed his depressed affect. Rinker said, "Hey, if you're feeling upset, you could go commit suicide outside by hanging yourself from the NESS building out back!" Rinker added, "If you need help, I can go get you a rope from the maintenance shop." This horrible encounter only deepened the plaintiff's depression and, further, put thoughts of suicide in his mind.

22. The harassment from co-workers continued on a daily basis through the summer. In early September 2019, Heather King, Human Resources Manager, called the plaintiff into a meeting. Apparently, she found out about a Facebook post that the plaintiff had made that referenced him being verbally attacked by people at work. She asked him to tell her about what was going on. The plaintiff told King about the ongoing verbal harassment. King said that she wanted to get involved and to try to get the situation resolved. She said that she would talk to the people involved. The plaintiff feared retaliation by his co-workers and asked King to not identify him as the one who had talked with her. King agreed to keep him anonymous.

23. Apparently King did talk with Schultz and Dolby, but the situation became worse, not better. In all probability, the plaintiff's co-workers knew that the plaintiff was the one who raised the issues about harassment, despite the fact that King did not mention him by name. A few days after the plaintiff's conversation with King, Schultz told the plaintiff, "No wonder your mom wants you gone; you're fucking worthless!" Every time that the plaintiff and Dolby were in the locker room getting changed, Dolby made sexual comments and gestures directed at the

4

plaintiff, like rubbing his bare chest and saying, "Oh, yeah, bet you like that, don't ya, you little queer!"

24. Notably, King never reached out to the plaintiff to find out whether the co-workers' treatment of him had changed.

25. On September 9, 2019, the plaintiff went to Health Services of Clarion, Inc. and was seen by Timothy Chan, D.O., because of his deepening depression and suicidal ideations. The physician prescribed antidepressants.

26. In October 2019, Gary Greenawalt, a co-worker on the plaintiff's team, got into an argument with the plaintiff. Greenawalt got so angry that he got off the forklift he was operating and approached the plaintiff yelling and screaming with his fists balled up like he was going to hit the plaintiff.

27. The plaintiff was now getting concerned about his physical safety, so he talked with King and Confer and advised them about the incident. He did not want Greenawalt to be disciplined or punished, instead, the plaintiff asked to be switched to another team. Confer and King agreed that something needed to be done. However, instead of switching the plaintiff to another team, they moved Greenawalt to a different team and left the plaintiff on B Team. Greenawalt's transfer did not sit well with the other co-workers on B-Team and they continued to harass the plaintiff on a daily basis.

28. In February 2020, a position opened on another team. The plaintiff put his name in for the job. Michael Shreckengost, Plant Manager, Bill Stroup, Finishing Supervisor, King and Confer interviewed the plaintiff for the position. The plaintiff told him that he wanted the job to learn more about what goes on in the plant and that he felt that he could be better use to the company in that position. He also told them that it would allow him to get off of the B-

Team. The plaintiff was not given the position. He remained on the B-Team and continued to be subjected to harassment.

29. One day in April 2020, the plaintiff, Schultz, Alex Wells (a co-worker on the B-Team) and Dolby were outside cleaning up around the plant. They took a short break and were talking about the fact that some of the machines were not working right. Dolby said, "Speaking of not working right … ." He then moved toward the plaintiff and put him in a sleep hold. The plaintiff was not able to move his arms. Dolby's right hand plugged the plaintiff's nose and his left hand covered his mouth. As he did this, Dolby said, "This is the only way to fix queers that don't act right." Neither Schultz nor Wells did anything to intervene. The plaintiff could not breathe and was immobilized. He was stressing out and feeling dizzy – like he was about to lose consciousness – before Dolby finally released the hold.

30. In July 2020, the plaintiff applied for an open position that would have put him on a different team. He was interviewed by King, Stroup, Shrekengost and Confer. The plaintiff was not given the job.

31. In August 2020, Schultz was badgering the plaintiff about the underwear he was wearing. Schultz repeatedly said, "I bet you like to run around in mommy's panties, don't you?" The plaintiff tried to shrug him off, but Schultz persisted and was adamant about seeing his underwear. He kept taunting the plaintiff, "Come on! Let's see them! Show us mommy's panties!" Schultz was getting louder and louder and the plaintiff was concerned that other employees were going to hear what was going on and would join the taunts. The plaintiff raised a small portion of his underwear above his jeans in an effort to get Schultz to shut up. The underwear was pink men's briefs by Athletech. Schultz started laughing uproariously. Later in the shift, Schultz said, "Bet you're gonna start wearing bras tomorrow!" At the end of the shift,

while they were changing in the locker room, Schultz said, "And we've got cross dressing Nancy over there in her little pink undies!"

32. On September 22, 2020, the plaintiff was in the control room with Dolby and other workers. He was sitting in a chair drinking a cup of coffee. Dolby came up from behind the plaintiff and wrapped his bandana around his neck and started strangling him. He pulled the bandana tight around the plaintiff's neck. The plaintiff spilled his coffee and reached up over his should to stop Dolby. Dolby finally let go; the plaintiff was dizzy and desperately trying to catch his breath. The other workers did not try to stop Dolby and seemed to enjoy the horrible spectacle.

33. The plaintiff had enough. That night, he went home and typed up a three-page letter of resignation. In pertinent part, the plaintiff wrote the following:

> … People would constantly harass me because of my sexual orientation (whether I'm straight, homosexual, bisexual, etc does NOT matter). Most of the jabs from co-workers were thrown at me in the break room before shift. Not one good thing about me was ever said to my face; only the negative. Had they taken jabs at other people, that'd be fine. The fact that they were ALL aimed towards me made me feel like I didn't belong here.

He printed three copies and went back to the plant delivering them to Shreckengost's, Confer's and King's offices.

34. On September 24, 2020, King called the plaintiff and asked if he would come to the plant to meet with her, Confer and Shreckengost. He agreed to do so. During the meeting, they told him that they saw the video footage of Dolby's assault and were horrified. They asked if he was quitting because of that incident. The plaintiff responded that he quit because of all the harassing conduct he had been subjected to, not just because of Dolby's physical assault.

35. Confer asked why the plaintiff had not to come to them about any of this. The plaintiff responded that he did, and afterwards, things got worse not better. He also told Confer that he repeatedly requested to be moved to a different team, but was turned down every time.

36. In light of the fact that the company failed to do anything to resolve the hostile work environment to which the plaintiff was being subjected, he felt that he had no other option except to quit his job. The plaintiff was, in effect, constructively discharged, on account of his sexual orientation due to a hostile work environment

## FIRST CAUSE OF ACTION

37. The preceding paragraphs are incorporated herein by reference as if they were set forth at length.

38. The plaintiff is protected against harassment and discrimination on the basis of his sexual orientation under Title VII.

39. The plaintiff was qualified for his position.

40. As detailed above, the plaintiff was harassed in the workplace because of his sexual orientation.

41. Despite his qualifications, the plaintiff was constructively discharged.

42. The defendant's harassment and constructive discharge of the plaintiff were in violation of Title VII because it was based upon his sexual orientation.

43. The defendant's violations of Title VII were committed with intentional or reckless disregard for the plaintiff's federally protected rights.

## SECOND CAUSE OF ACTION

44. The preceding paragraphs are incorporated herein by reference as if they were fully set forth herein.

45. As a direct and proximate cause of its actions, detailed above, the defendant has violated the plaintiff's right to be free from discrimination and harassment under the Pennsylvania Human Relations Act, 43 Pa. C.S.A. § 951 *et seq.*

46. The defendant's violations of the PHRA were committed with intentional or reckless disregard for the plaintiff's protected rights under the PHRA.

WHEREFORE, the plaintiff respectfully requests judgment be entered in his favor and against the defendant and that the defendant be required to provide all appropriate remedies under Title VII and the PHRA, including attorney's fees and costs.

Respectfully submitted,

*/s/ Michael J. Bruzzese*
Michael J. Bruzzese
Pa. I.D. No. 63306

2315 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219

(412) 281-8676

Counsel for the plaintiff

Dated:  February 2, 2021